## Case No. 2,932.

COCKER et al. v. FRANKLIN HEMP & FLAX MANUF'G CO.

[3 Sumn. 530.][1]

Circuit Court, D. Massachusetts. May Term, 1839.

SALE AND DELIVERY — REASONABLE TIME — CONTRADICTION OF WRITTEN CONTRACT.

1. If a contract or order, under which goods are to be furnished, does not specify any time at which they are to be delivered, the law implies a contract, that they should be delivered within a reasonable time; and no evidence will be admissible to prove a specific time at which they were to be delivered, for that would be to contradict and vary the legal interpretation of the instrument.

2. The question of reasonable time is determined by a view of all the circumstances of the case; and parol evidence of the conversations of the parties may be admitted to show the circumstances under which the contract was made, and what the parties thought was a reasonable time for performing it.

[Cited in Nunez v. Dautel, 19 Wall. (86 U. S.) 563.]

At law. Assumpsit [by Robert Cocker & Co. against the Franklin Hemp & Flax Manufacturing Company]. There were several counts in the declaration. (1.) On an account annexed, for $2,157.97. (2.) Money counts. (3.) Special count, for not accepting certain articles (gill pins), made by the plaintiffs at the request of the defendants. Plea, general issue.

At the trial, it appeared, that, on the 13th of July, 1836, an order or contract had been entered into at Boston, by the agent of the plaintiffs (who were manufacturers at Hathersage, Sheffield, England), with the agents of the defendants, a manufacturing company in Boston, for the manufacture for the defendants of certain gill pins. The contract was in the following terms: "Boston, July 13, 1836. The Franklin Hemp and Flax Manufacturing Company of Boston order from Cocker & Sons, Hathersage, Sheffield, the following copper gills, which are charged at sterling prices, and to be imported by Cocker & Sons, and charged forty-five per cent. advance for importation; all expenses of importation to be paid by Cocker & Sons. The gill pins will be charged as stated below, at net prices. The F. H. & F. M. Company paying cash on delivery of goods in New York, or drawn upon them at one day's sight." (The list of articles ordered is omitted.)

The principal ground of defense was, that the gill pins were not furnished within the period, at which it was agreed between the agent of the plaintiffs and the agent of the defendants, at the time when the contract was entered into. Parol evidence was of-

---

[1] [Reported by Charles Sumner, Esq.]

fered by the defendants, to show, that, at the time when the contract was made, certain conversations were had between the respective agents, in which the agent for the plaintiffs expressly agreed to furnish the articles, deliverable at New York, within four months from the time of making the contract, that is to say, on or before the 13th of November, 1836. In point of fact, the articles were not begun to be manufactured until the latter part of October, or the beginning of November; and they were not completed, so as to be shipped, until the end of December, 1836. They arrived in New York about the 18th of March, 1837, and notice was immediately given to the company, who refused to receive them. In fact, on the 19th of January, 1837, the agent of the defendants had written to the agent of the plaintiffs, informing him, that the company did not hold themselves bound to receive them, as they were to have been delivered in the month of November. The manufactory of the defendants, in which the articles were to be used, was in a state to receive the articles for use in November and December, 1837; and the articles not having then arrived, other articles for the same purpose, of an inferior quality, were used as a substitute. The manufactory of the defendants was accidentally burnt down about the 14th of February, 1837. It was proved at the trial, that the sole reason of the delay in manufacturing the articles, was the unusual pressure of orders in the year 1836, and that it was impracticable, consistently with the other engagements of the plaintiffs, to have furnished them at an earlier period. Several witnesses swore, that there was this unusual pressure during that year; and that the shortest time to furnish such articles would be, if they were to be manufactured, from five to six months. And they stated, that they thought these articles were furnished within a reasonable time. The main defence at the trial being, that the goods were not furnished according to the agreement, a question was made, whether the parol evidence of the conversations between the parties, at the time of the contract, was admissible. It was ruled by the court to be admissible, not for the purpose of establishing the specific time when the contract was to be performed, for that would be to add to and vary the written contract; but to show the circumstances under which the contract was made, and what the parties then thought was a reasonable time for furnishing them.

The cause was argued to the jury by Mr. Dehon and Charles G. Loring, for plaintiffs and by Mr. Bartlett for defendants. The latter cited [Pearson v. Bank of Metropolis] 1 Pet. [26 U. S.] 89. The former cited 2 Greenl. 249, and Ellis v. Thompson, 3 Mees. & W. 445.

STORY, Circuit Justice, in summing up to the jury, said:

The contract or order, under which these gill pins were to be furnished, does not specify any time at which they were to be delivered. The result of this omission is, that the law treats the contract, as if it had expressly stated, that they were deliverable within a reasonable time. No evidence, therefore, could properly be admissible to prove a specific time, at which they were to be delivered; for that would be to contradict and vary the legal construction of the instrument. But the parol evidence was admitted of the conversations, to show what, at the time, the parties understood was a reasonable time, within which, under ordinary circumstances, the contract might be fulfilled. In this view, the parol evidence did not contradict or vary the written contract, but went merely to show the opinions of the parties as to the reasonable time for executing it. I thought, and still think, that in this view the evidence was clearly admissible. And I am very glad to find, that this my view of the matter is confirmed by the opinion of the court of exchequer in Ellis v. Thompson, 3 Mees. & W. 445. Mr. Baron Alderson, (a very able judge), on that occasion used the following language, which I cite, as fully expressive of the very opinion, which I entertain on the same subject. "There is no specification," said he, "in the contract, as to the time when the delivery is to take place, and, therefore, the law would imply, that the delivery should take place within a reasonable time. And it is a question for the jury at the trial; and this was the question put to them: How the reasonable time, which is an implied part of the contract, is to be ascertained? It seems to me, that the correct mode of ascertaining it is, in such a case as this, by placing the court and jury in the same situation as the contracting parties themselves were in, at the time they made the contract; that is to say, by placing before the jury all the circumstances, which were known to both parties at the time the contract itself took place. By so doing, you enable the court and jury to form a safer conclusion, as to what is the reasonable time, which the law implies, and under which the contract itself took place." So far the learned judge has expressed himself on the very point of this case. The whole question now before the jury is, whether these articles were manufactured and offered to be delivered within a reasonable time. That reasonable time must be judged of by all the circumstances, and, of course, with all the natural calculations, which might fairly arise from the distance of the countries, the season of the year, the state of the markets, and orders, the pressure of business, and the common disappointments and retardations incident to the manufacture of any new article. The contract was made in Boston; the articles were to be manufactured in England. Of course, a reasonable time for the transmission of the order, for its due and

faithful execution, and for the shipment and arrival at New York, was necessarily in the contemplation of the parties. Were the goods, then, delivered, or offered to be delivered, within such reasonable time? If they were, then the defendants are bound to pay for them. If not, then they ought to be exonerated. The conversations which have been admitted, as I have stated, are evidence, not of a contract to deliver at a specified time (four months), at all events, or otherwise the bargain was to be void. But merely as statements of opinion and probabilities, uttered by a young man, sanguine in his expectations, and, without doubt, honestly made. But the other side must be presumed to be as good judges as himself, of the time which might or would be required for the transaction of the order and the shipment and arrival of the goods, if not of the time required for the actual execution of the order. Opinions are not contracts, but expressions of belief; and must so be understood. They affirm what may be, not what will or shall be absolutely done.

Let us then see, how the evidence stands on this subject as to the reasonableness of the time and the diligence in executing the order. (Here the judge recapitulated the evidence. The case was then left to the jury upon the matter of fact.) [2]

The jury disagreed, and no verdict was found.

[NOTE. A new trial was had, and the jury rendered a verdict for plaintiffs. Case No. 2,931. For hearing on exceptions to interrogatories and cross interrogatories, see Case No. 2,930.]

COCKERILL (CONNER v.). See Case No. 3,112.

COCKREM (BIRD v.). See Case No. 1,429.

COCKRIN (UNITED STATES v.). See Case No. 14,822.

COCKRUN v. McLEAN. See Case No. 2,927a.

---

[2] In Bottomley v. Forbes, 5 Bing. N. C. 127, the court held, that, where a doubt was raised by evidence upon the meaning of a mercantile contract, evidence was admissible of the usage or course of trade at the place where the contract was to be carried into effect, to explain or remove that doubt.

