PALEN *et al. v.* HAAKE.

(*Superior Court of Buffalo, General Term.* July 13, 1888.)

SALE—DELIVERY—REASONABLE TIME.

On October 19th, defendant informed plaintiffs that a car of coal which he had ordered from the latter more than a month before, for delivery at a certain place, had not arrived, and directed them to send it. On the 26th, plaintiffs shipped the coal. It did not arrive, and in the middle of November defendant again informed plaintiffs of its non-arrival, and told them to send it. Defendant testified that it

took from two to three weeks to get the coal from the time the order was given. The coal arrived December 2d, when defendant refused to receive it. *Held*, that the delivery was made in a reasonable time.[1]  HATCH, J., dissenting.

Appeal from municipal court.

Action by Robert Palen and another against Frederick Haake for the price of a car-load of coal. Verdict and judgment for plaintiffs, and defendant appeals.

*Frank E. Perkins*, for appellant.   *F. M. Inglehart*, for respondents.

TITUS, J.   The defendant appeals from a judgment of the municipal court for $50.38, for a car of coal claimed to have been sold and delivered to the defendant by the plaintiffs. It appears from the evidence that on the 5th day of September, 1887, the defendant bought three cars of lump coal of the plaintiffs, at $2.50 per ton, to be delivered on the Gilbert switch. Two cars of the coal were delivered on the 19th day of October, 1887 but the third car does not appear to have been delivered at that time. This is the load which is now in dispute, and was worth $45.38. This car of coal was not actually delivered at the Gilbert switch until on or about the 2d day of December. It is now claimed by the defendant that the judgment is erroneous, and that he was not obliged to accept the coal at the time it was delivered, for the reason that it was not, as he claims, delivered in a reasonable time after the purchase. The plaintiff Burns testifies: "I ordered the cars to the switch. I sent the order down to the railroad to deliver the cars to the switch. I sent the invoice of the cars to the defendant, September 7, 1887. For some reason the cars were not delivered at the switch on time. About September 10th the defendant came to our office, and said he would have to have some coal, and we gave him a car, and one load of 'Run of Mines' coal from the Smith-Street yard. We told him (the defendant) we would get three others to take their place. About October 19, 1887, we delivered two cars on the order, and sent the bill, and on the 26th we delivered the third car, which is the one in dispute. We didn't hear anything from him, and supposed, until some time in October, that he had received the three cars we had first billed to him." The witness further says that "on the 19th of October he and his partner drove out to defendant's place. He then said that the third car hadn't yet come; that he had burned that kiln, but could use the other car; and we should let it come along." That on the 26th day of October he ordered the Erie Railroad Company to deliver the coal, and he at the same time sent the defendant an invoice of the car. A week or two after this, the defendant told him the coal had not been delivered at the switch. That he made no further complaint about the non-delivery of this coal. The plaintiff Palen says, in substance, that "he went with Burns, about the middle of November, to see defendant, and collect the bill; that the defendant said he would pay the following Wednesday. He stated that he hadn't received the last car of lump coal, invoice 2, but that he would get it as soon as it was placed where he wanted it; that it was not on the Gilbert switch, but was in the neighborhood, on some other switch. He said he would take it when it was placed on the Gilbert switch. He said he was not in need of the coal then, but we should send the car along, and he would take it anyway. He said nothing about sending it within a day or two." The plaintiffs then called Ryan and McGuire, men who were in the employ of the railroad company, to show they had ordered the coal, and that the coal had been delivered. This is substantially all the testimony offered by the plaintiffs upon the question of the sale and delivery of the coal, and it seems to me that the facts are sufficient to justify the court below in

[1] As to the time of delivery in sales of chattels, see Cunningham v. Judson, (N. Y.) 2 N. E. Rep. 915, and note. A stipulation, in a contract of sale, to ship goods at a certain time, is a condition precedent, a failure to perform which releases the buyer from all liability. Salmon v. Boykin, (Md.) 7 Atl. Rep. 701, and note.

determining that, under the circumstances of this case, the plaintiffs did, within a reasonable time, deliver the coal to the defendant, and were entitled to judgment for the amount, unless the defendant, by his proof, in some way answers the plaintiff's case. The defendant called but two witnesses, himself and son. He says: "Two cars came the 8th or 9th, for which we received an invoice about October 19th. I remember the talk with the plaintiffs about the middle of November. I told them I wanted the coal if I could get it any time within a day or two. It was along about November 4th or 5th that we talked. I had no use for the coal December 2d. I never offered to take the coal after November 15th." He further says "that he sent his son to say that he didn't want the car at that time; that it took about two or three weeks to get coal from the time the order was given." The defendant's son testifies "that he went to plaintiffs' office on November 28th, and paid them some money; that he told them that his father would not take the coal, and had no further use for it." The plaintiff Burns, in rebuttal, says: "Young Haake did not refuse the car, and said nothing about his father not wanting the coal." This is substantially all the evidence in the case. The testimony of the witnesses Haake was disputed in every particular by the witness Burns on his re-examination. The witnesses were all before the court below, and the credit to be given to their testimony could best be determined by that court. Ordinarily, the plaintiffs would have a reasonable time in which to deliver the coal after receiving the order. The plaintiffs say it takes two or three weeks to deliver it after it has been ordered. The witness Palen says he called upon defendant about the middle of November, and had a talk with him about the coal, and the defendant said he would take it when placed on the Gilbert switch. It was placed on the Gilbert switch on the 2d day of December. It does not seem to me that the defendant has answered plaintiffs' proof so as to entitle him to a judgment on the facts in the case; and, as no other error is claimed to have been committed in the court below, the judgment should be affirmed, with costs.

BECKWITH, C. J., concurs.

HATCH, J., (*dissenting.*) About the 5th of September, 1887, the defendant ordered from plaintiffs three car-loads of coal, to be used in burning brick, and to be delivered upon the Gilbert switch, near defendant's brick-yard. The three car-loads were taken to the switch; but, not being promptly unloaded, they were removed to the dock of Wicks & Co., and there unloaded. Upon learning these facts, the plaintiffs saw defendant about October 19, 1887, and arranged for the delivery of three more loads, stating, in their letter of advice of that date, that they had ordered two car-loads that day, and would send the third in a couple of days. While the two cars of coal were ordered for October 19th, they were not in fact delivered until about November 8, 1887, when they were received and paid for by defendant. On October 26, 1887, the plaintiffs gave an order to the Erie Railway Company to deliver the third car-load. The Erie Railway Company, on the following day, placed said car on the Hasselback switch, which was some distance from the Gilbert switch, where it remained until the 2d of December following, when it was placed upon the Gilbert switch. The defendant refused to receive it, and it was unloaded upon the ground. About the middle of November, plaintiffs had notice that the last car-load had not been delivered, and they saw the defendant, who told them to send this car along, and he would take it. Upon the 26th day of November, defendant's son informed plaintiffs that the car had not been delivered. Plaintiffs thereupon telephoned defendant, and upon the 30th of November they notified defendant in writing that they should hold him responsible for the coal which the Erie Railway had placed upon the Gilbert spur, and should dump it upon the ground. Defendant refused to pay

for the coal, and this action was brought.  Plaintiffs had judgment, from which an appeal was taken.

The contract between the parties was to deliver the coal upon the Gilbert switch, and until such delivery was made there rested upon the defendant no liability to receive or pay.  *Iron-Works* v. *Railroad Co.*, 62 N. Y. 272.  The delivery upon the Hasselback switch was not a delivery to defendant, and created no liability upon his part.  He had the right to insist upon the delivery at the place where he contracted for.  It is claimed that this was done, and, in consequence thereof, that the defendant became obligated to pay.  This presents the question to be decided.  When the first three car-loads of coal were ordered, no time was agreed upon for delivery; and the same is true of the renewed order of October 19th.  The law therefore required that such delivery should be made within a reasonable time; and what constitutes a reasonable time must be determined with respect to the character, circumstances, and surroundings of each particular case.  *Terwilliger* v. *Knapp*, 2 E. D. Smith, 86; *Jones* v. *Fowler*, 1 Sweeney, 5; *Cocker* v. *Manufacturing Co.*, 3 Sum. 530.  The last order was given on the 19th of October, when plaintiffs wrote that they had ordered two car-loads onto defendant's switch that day, and that they would put in another in a couple of days.  The delivery was made by the Erie Railway.  The record does not show when the order to the railroad was given for the two car loads last mentioned, but they were not in fact delivered upon the Gilbert switch until the 8th or 9th of November.  The order for the third car was not given by plaintiffs until October 26th.  About two weeks thereafter plaintiffs saw the defendant, and he then informed them that the third car had not arrived.  The plaintiffs, however, did nothing more to effect the delivery of this car of coal to the Gilbert switch.  The plaintiff Burns then knew that the order had been given, and that the coal should at that time have been upon the Gilbert switch.  Yet with such knowledge, and notice from the defendant, he testifies that he did nothing to secure its delivery.  At this time the defendant was ready to take the coal, and told plaintiff to send it along.  No attempt, however, to deliver was made, so far as the record shows.  On November 28th, defendant's son notified plaintiffs that the coal was still undelivered, and he testifies that he then notified the plaintiffs that his father would not take the coal.  This testimony, however, is denied by plaintiffs, but it does appear that they had some communication with respect to it; for Palen testifies that he had frequent telephone communications with defendant's place, the last one upon November 30th, and on that day he notified defendant in writing, stating that he should hold him "responsible for the car number 35,834.  The Erie Railway has placed it for you on the Gilbert spur, and will dump it on the ground."  I think the necessary inference which arises from this notice, when coupled with all the testimony, is that plaintiffs then had notice that defendants would not receive the car; else there was no necessity for the notice.  While the plaintiffs state that the car was then upon the Gilbert spur, such was not the fact, nor was it placed there until two days after.  It may be that the plaintiffs supposed the car had been delivered, and that the fault was with the railway, but that did not excuse them from performance.  *Jones* v. *Fowler, supra.*  It is suggested that defendant knew that the coal would not be delivered under two or three weeks after the order, and that consequently the delivery was within the contemplated time.  This might be true as to the original order, but here more than twice the longest time had elapsed.  I do not think it fair to assume that such time was within the contemplation of the plaintiffs, or of the defendant, when they had the subsequent conversation, and defendant notified them that the coal was not then delivered.  Defendant had the right then to assume that the coal would be delivered without delay, as the order had been given on October 19th.  It appears that the defendant was manufacturing brick, and used the coal for burning in his kiln.  The plaintiffs were aware of this.

Defendant testifies that the season for burning brick had closed when the coal was finally delivered. Under all the circumstances, I think the coal was not delivered within a reasonable time after the order, and that the defendant was not bound to receive and pay for it. Such conclusion would lead to a reversal of the judgment.