### HAMILTON et al. v. PHOENIX INS. CO. OF HARTFORD.

(Circuit Court of Appeals, Sixth Circuit. April 3, 1894.)

#### No. 140.

1. INSURANCE—PROOF OF LOSS—APPRAISEMENT.
   Several insurance companies having made a joint demand for a joint appraisal, upon proof of loss by the insured, finally notified the insured in a joint letter that, if the form of "submission to appraisers" which they had submitted contained any provision or condition limiting or defining the duties of the appraisers not prescribed by the several policies, each company would submit its own form, as they desired and demanded a submission free from any condition imposed by either party. *Held,* in a suit against one of said companies, where the policy stipulated for a separate appraisal, that, under the terms of the joint letter, the company thereby waived the appraisal, unless it thereafter submitted a form of appraisal within a reasonable time. Insurance Co. v. Hamilton, 8 C. C. A. 114, 59 Fed. 258, approved.

2. SAME—REASONABLE TIME—QUESTION FOR JURY.
   The company demanded a separate appraisal in 17 days after the joint letter was written. and within 60 days after proof of loss by the insured. *Held,* that the question whether the demand for a separate appraisal was made in a reasonable time was a question for the jury.

3. SAME.
   The policy provided that the loss was to be paid 60 days after due notice and satisfactory proof of such loss. *Held,* that the stipulated 60 days was

the period between the reception of the satisfactory proof and the time of payment, and not the period between the tendering of any proof and the acceptance of it·as satisfactory.

4. REASONABLE TIME—QUESTION OF LAW FOR THE COURT.
    The question of reasonable time is a question of law for the court in two classes of cases, viz.: (1) Commercial transactions which happen in ,the same way, day after day, and present the question of reasonable time on the same data in continually recurring instances, so that, by a series of decisions of the courts, the reasonable time has been rendered certain. (2) Where the time taken is so clearly reasonable or unreasonable that there can be no room for doubt as to the proper answer to the question.

5. SAME—QUESTION OF FACT FOR THE JURY.
    Where the answer to the question is one dependent on many different circumstances, which do not constantly recur in other cases of like character, and with respect to which no certain rule of law has theretofore been laid down, or could be laid down, the question is one of fact for the jury.

In Error to the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

This was an action by Robert Hamilton (for whom his executors, Cora B. Hamilton and John W. Bryant, have been substituted) against·the Phoenix Insurance Company on a policy of fire insurance. The circuit court directed a verdict for defendant, and rendered judgment accordingly. Plaintiffs sued out this writ of error.

Robert Hamilton, the testator of the plaintiffs in error, filed his petition against the defendant in error, the Phoenix Insurance Company of Hartford, Conn., seeking to recover a judgment for the loss under a fire insurance policy in, the sum of $2,500. At the close of the evidence the court directed the jury to return a verdict for the defendant. This was a writ of error to reverse the judgment entered upon the verdict. The policy sued on was dated April 21, 1885, and provided that in consideration of $25.78 the Phoenix Insurance Company insured Robert Hamilton to the amount of $2,500 on his stock of tobacco, manufactured, unmanufactured, and in process of manufacture, and the materials for making same, in his tobacco factory, situated at No. 413 and No. 415 Madison avenue, Covington, Ky. The policy further provided that the amount of loss or damage was to be estimated according to the actual cash value of the insured property at the time of the fire, and was to be paid to the insured, or to the insured's legal representatives, 60 days after due notice and satisfactory proof of the same should have been received at the office of the company, in accordance with the terms of the policy thereinafter mentioned. The policy provided, further, that "no suit or action of any kind against this company for the recovery of a claim under this policy shall be sustainable in any court of law or chancery, unless commenced within the term of one year from the date of fire; such lapse of time to be deemed conclusive evidence against the validity of such claim."

The proceedings to be taken in case of loss were noted in the policy as follows: "When a fire has occurred damaging the property hereby insured, the insured shall give immediate notice, and render a particular account of such loss, signed and sworn to by them; if there is other insurance (whether valid or not), shall give a detailed account of same, with copies of the written portion of all policies; shall also give the actual cash value of the property; their interest.therein; the interest of all other parties therein (if any), giving their names; the amount of loss or damage; for what purpose and by whom the building insured, or containing the property insured, and the several parts thereof, were used; when and how the fire originated; shall also produce a certificate, under the hand and seal of a magistrate, notary public, or commissioner of deeds, nearest to the place of the fire, not concerned in the loss as a creditor or otherwise, nor related to the insured, stating that he has examined the circumstances attending the loss, knows the character and condition of the insured, and verily believes that the insured has, without fraud,

sustained loss on the property insured to the amount which he shall so certify." Further provisions were as follows: "This company may examine the books of account and vouchers of the insured, make extracts from same, and, if required, the insured shall submit to one or more examinations under oath, and sign same when reduced to writing; shall exhibit to the company or its representative all that remains of the property covered by this policy, and, if desired, certified copies of all bills and invoices where originals have been destroyed; and until sixty days after the proofs, examinations, declarations, and certificates herein called for are rendered, including an award by appraisers, when an appraisal has been required, the loss shall not become payable. Proofs of loss in all cases shall be made and signed by the party insured. There can be no abandonment to the company of the property insured, but the company reserves the right to take the whole or any part thereof, at its appraised value." "Differences to be submitted to appraisers: If differences of opinion arise between the parties hereto, as to the amount of loss or damage, that question shall be referred to two disinterested men, each party to select one (and, in case of disagreement, they to select a third), who shall ascertain, estimate, and appraise the loss or damage, and the award of any two in writing shall be binding on the parties hereto as to the amount of such loss or damage, and each party shall pay one-half the expense of reference. When personal property is damaged, the insured shall put it in the best order possible, and make an inventory thereof, naming the quality and cost of each article, and the amount claimed on each, and upon each article the damage shall be separately appraised in the manner above provided. Detailed reports of the appraisers in writing, under oath, shall form a part of the proofs hereby required."

The petition of the plaintiff, after setting out the terms of the policy as above, averred that the property insured was worth $47,172.77; that on the 16th day of April, 1886, this property was partially destroyed by fire, with a loss of $30,000; that on the 24th day of April, of the same year, the plaintiff gave notice of the loss to the defendant, and delivered to the defendant due proofs of said loss, as provided by said policy; that the plaintiff had done and performed all the conditions in the policy contained on his part to be kept and performed; that, in pursuance of the privilege in said policy contained, he (plaintiff) had further insurance on the property, amounting altogether, with the insurance provided by this policy, to the aggregate sum of $40,000; that, by the terms of said policy, he became and was entitled to recover of the defendant the proportion of the loss so sustained which the sum insured by the said defendant's policy bore to the whole amount insured as aforesaid, to wit, the sum of $1,875, with interest thereon from April 16, 1886.

In the answer the defendant company admitted the execution of the policy, and that there had been a loss, but denied the value set upon the property insured and the amount of the loss as averred. The answer further admitted receiving due notice of the loss, but denied that proper proofs of loss had been filed, as required by the policy, and denied the performance of other conditions thereof as averred. The answer further averred "that serious difference as to the amount of loss or damage, irreconcilable by the parties, did occur; the plaintiff claiming that damage amounting to $40,000 arose, $2,500 of which was payable by the defendants, whereas the defendants claimed and believed that the loss was very slight, and but a small part of the amount so claimed by the plaintiff, and of an uncertain character, requiring a careful examination of disinterested arbitrators; that the damage and loss should be ascertained by such appraisal and award, and that the same should be submitted as a part of the proof, and it insisted upon the same as a means of determining said loss and of such proof; that the plaintiff neglected and refused to permit any such appraisal and award, and, against the protest of defendants, sold at public auction all the said property, and thereby put it out of the power of the parties to have the appraisal, arbitration, or award, or to take the property in whole or in part at such appraisal, or to have such proof of loss, and therefore the defendant says the plaintiff cannot recover in this action."

Plaintiff, in reply, denied that the defendant requested the plaintiff, in writing, that the amount of said loss be left to competent and impartial persons,

as provided in the policy; denied that he did not permit an appraisement to
be made in accordance with the provisions of the policy; and averred, on the
contrary, that the plaintiff demanded in writing that the amount of the loss
sustained by the plaintiff should be submitted to arbitration, as provided in
the policy, and that defendant refused so to submit same.  The reply further
denied that the plaintiff prevented an appraisal of the damaged stock, and
deprived the defendant of the right to have an appraisal thereof made or to
take the same at such appraisal, and averred that the only demand for a sub-
mission of such differences or any matter connected with said policy of insur-
ance that was made by defendant upon plaintiff was made by defendant upon
plaintiff in connection with and as part of a joint demand of divers other in-
surance companies having policies of insurance upon said property in favor
of plaintiff, and covering the same loss: and that such demand was for the
submission to arbitrators, whose award should be binding on the parties
as to the amount of such loss or damage; and that it was not true that
the defendant ever made any demand of plaintiff for a submission of
such differences to appraisers and for appraisal.  The third paragraph of the
reply was as follows: "And plaintiff further says that he, on or about the
26th day of April, 1886, made and delivered to the defendant due proofs of his
loss under said policy, as averred in the petition, with the request accompany-
ing said proofs of loss that any defects in their substance or their form might
be pointed out, and the proofs returned to plaintiff, so that he might perfect
the same to the defendant's satisfaction; that said proofs and request were
then and there received by said defendant; but said defendant did not
then, nor did it afterwards, object to or point out any defect or omission in
the form or sufficiency of said proofs of loss, nor did it return the same to the
plaintiff; that thereby, and by defendant's further acts and silence in the
premises, the defendant has waived its rights to now object in any manner
to the form or sufficiency of said proofs of loss, and has waived its right to ask
or require of the plaintiff any other or different proofs of loss than were here-
tofore made and delivered to the defendant by plaintiff as alleged in his peti-
tion."

On the trial, counsel for the plaintiff, after offering the policy of insurance
sued on, also offered the arbitration and appraisement clause in the policies
of the London & Liverpool & Globe Insurance Company and the Home In-
surance Company issued to plaintiff, to show that the arbitration clauses in
them were very different from that in the defendant company's policy, and
that there could not be a joint submission to arbitrators or appraisers conform-
ing to the policies of all the insuring companies.  Plaintiff introduced the fol-
lowing letter:

"Covington, Ky., April 26, 1886.

"Dear Sirs: I inclose proof of loss under policy of your company, with in-
voice attached, in compliance with the requirements of the policy.  If there is
any defect in the substance or form of the above proof, please advise me there-
of at once, that I may perfect the same to your satisfaction, and return the
proof to me in such case for that purpose.  The property described and dam-
aged has been invoiced and arranged, and is ready for examination by your
company.  Such examination must be made at once, for the reason that I am
obliged to occupy the premises in the prosecution of my business, and each
day of delay involves considerable loss and expense to me.  As before advised,
I propose to send the entire stock to be sold at public auction in a few days,
whereof I will give you notice.  It can be readily inspected in a short time
where it now lies.  Please acknowledge receipt of above proofs by return
mail.

"Very truly yours,                              Robert Hamilton."

The proofs of loss were also introduced.  They contained an inventory
of the property injured and an estimate that the amount of the loss on
the property was $40,000, which the insured claimed as the loss on the
whole property, and against this Phoenix Company the sum of $2,500.  The
parties stipulated that the amount of plaintiff's recovery, if anything, should
be fixed at $1,588, with interest from June 16, 1886.  There was also intro-
duced a letter from the agents of the Phoenix Insurance Company ac-

knowledging receipt of proofs of loss, dated April 27, 1886, and stating that the same would be forwarded to the company, and that the plaintiff would hear from it. The plaintiff thereupon rested his case, and the defendant offered a letter of April 28th, signed by all the 12 insuring companies, and sent to plaintiff:

"Cincinnati, O., April 28, 1886.

"Robert Hamilton, Esq., Covington, Ky.—Dear Sir: The undersigned, representing the several insurance companies against which you have made claim for loss under their respective policies of insurance upon stock in your tobacco factory, Nos. 413 and 415 Madison street, Covington, Kentucky, claimed to have been damaged by fire of April 16, 1886, beg leave, jointly, to take exception to the amount of claim made, and to demand that the question of the value of and the loss upon the stock be submitted to competent and disinterested persons, chosen as provided for in the several policies of insurance under which claim is made; and we hereby announce our readiness to proceed at once with this appraisement, so soon as your agreement to the demand is declared. We further desire, jointly, to protest against the removal, sale, or other disposition of the property until such an appraisement has been had, and to notify you that the insuring companies will in no way be bound by such ex parte action. You may address your reply to the joint demand made above in care of the London & Liverpool & Globe Insurance Company, Third and Main streets, Cincinnati. Waiving none of the rights of the several companies under the terms of their respective policies, we are

"Very respectfully yours."

There followed, in answer to this, a lengthy correspondence, which is known as "the joint correspondence" in this controversy. It is set out in full in the case of Hamilton v. Insurance Co., 136 U. S., 242, beginning on page 247, and ending at the top of page 252, 10 Sup. Ct. 945, with the letter of May 7, 1886, which is as follows:

"Cincinnati, O., May 7, 1886.

"E. W. Kittredge, Esq., City—Dear Sir: Referring to your letter of the 4th, setting forth your understanding of the position taken by the two parties, permit me, on behalf of the companies, to take exceptions to your first statement, to wit: 'I understand the companies demand that appraisers be selected by the companies and the assured, who shall estimate the loss by their own judgment, and without hearing the testimony of witnesses who may be called by either party, and that the parties shall be bound by their report or award as to the amount of the loss thus made.' This does not correctly state our position, which remains now as stated in our communication of the 3d, to wit: 'The appraisers may, at their discretion, seek any evidence they deem necessary for their own full information.' What we object to and protest against is the sale of the goods, or the consideration by the appraisers of evidence founded on that fact or result. If the form of 'submission to appraisers' we submitted contains any provision or condition limiting or defining the duties of the appraisers, and not prescribed by the several policies, each company will submit its own form, as we desire and demand a submission free from any conditions imposed by either party.

"Very truly,                    J. M. De Camp, General Agent."

The same joint correspondence is referred to and commented on in the case of Insurance Co. v. Hamilton, 8 C. C. A. 114, 59 Fed. 258, in the opinions of Judges Severens and Swan. There was no letter after May 7, 1886, between Hamilton and the defendant company, until May 20, 1886, when the following was written by Mr. Kittredge, as attorney for Robert Hamilton:

"Cincinnati, O., May 20th, 1886.

"The Phoenix Insurance Company of Hartford—Dear Sirs: I beg leave to inclose a notice from yesterday's Covington Daily Commonwealth of the sale of the tobacco and articles in said notice named of Robert Hamilton, by you insured.

"Very truly yours,                    E. W. Kittredge.
                    "By E. K. Stallo."

Upon May 24th the following answer was received from the general agent of the Phoenix Insurance Company:

"E. W. Kittredge, Attorney on Behalf of Robert Hamilton, Cincinnati, Ohio: Your favor of the 20th inst. is at hand, in which you inclose notice of sale of stock of Robert Hamilton, of Covington, Kentucky, the same being in part insured by this company, under policy No. 5,044. Our reply to this notice is a respectful reference to the conditions of the policy named, and a reiteration of our demand for arbitration in accordance with the provisions therein expressly defined. The proposed sale of the property insured by this company is against our protest, it being in direct conflict with the spirit and intention of the contract, as affecting the rights and privileges of the insured and insurer, and your client's action in defiance thereof must be considered at his own risk and peril, and as barring him from maintaining any claim for loss or damage should he persist in so doing. We are still ready to arbitrate as the policy provides (see extract below), and beg to say that none of the conditions of said instrument have by us, or by any one in our behalf, been waived, or are intended to be waived, by anything said in this communication.

"Respectfully,      H. M. Magill, General Agent."

—To which this reply was sent by Mr. Kittredge, for Robert Hamilton, under date of June 3d:

"H. M. Magill, General Agent—Dear Sir: Your favor of the 24th ult. is received in respect to the matter of the insurance by your company of Robert Hamilton, of Covington, Kentucky, under policy No. 5,044. I regret to differ with your company in respect to the right of Robert Hamilton to make sale of the damaged property insured, but, inasmuch as Mr. Hamilton has already sold all the property in question in accordance with the notice sent to your company, it does not seem necessary to me to discuss this point further. If your company really desires to submit the question of the amount of the loss sustained by Mr. Hamilton to arbitration, notwithstanding all that has transpired, Mr. Hamilton is quite ready now to submit that question to competent and impartial arbitrators. He simply demands, the arbitrators being selected, that in the agreement for submission it be provided that the company and the insured shall be notified of the time of the hearing by the arbitrators, and that the arbitrators shall hear all competent legal testimony that may be offered by either party, and that a reasonable time be prescribed within which the award shall be made. If your company desire or will consent to a submission to arbitrators to fix the amount of loss as above proposed, and will select an arbitrator for that purpose, Mr. Hamilton will do the like, and the submission should be had forthwith. I will prepare an agreement for submission upon the above terms at once upon being notified by you of your willingness to make it. I beg to call your attention to the fact that your policy limits the time within which Mr. Hamilton must commence his action under it, and prescribes the time when a suit may be brought, and he cannot contemplate a postponement of this question of arbitration to any time inconsistent with his right to bring his action and to prosecute his right in a court of law.

"Yours very respectfully,      E. W. Kittredge,
"For Robert Hamilton."

—To which the insurance company answered as follows:

"June 5th, 1886.

"E. W. Kittredge, Esq., Cincinnati, Ohio—Dear Sir: We have carefully read and fully considered your valued favor of the 3d instant, relative to the Hamilton claim at Covington, Ky., under policy No. 5,044 of the company. For reply we deem proper to say that, in our judgment, at least, the aim and object of the arbitration having been defeated by the action of your client in disposing of the property on which a loss or damage is claimed, contrary to our written protest, and in defiance of our stipulated rights under the contract, we do not see how it is possible now to arbitrate or to estimate the amount of such loss or damage, if any. The goods have been disposed of, and are beyond the reach of the claimant, and, this being the case, there is nothing further that we can possibly do under the contract. We must,

therefore, be permitted to stand squarely upon the conditions of the insurance contract, which are fully set forth in the policy, and to respectfully refer you again to our letter of the 24th ultimo, and to previous letters sent jointly with other companies interested in the claim. Referring to the closing paragraph of your communication, permit us to say that the following is the clause in the condition of our policy alluded to by you, which limits the time in which the claimant may commence an action under a policy against this company: 'No suit or action of any kind against this company for the recovery of a claim under this policy shall be sustainable in any court of law or chancery unless commenced within the term of one year from the date of fire. Such lapse of time shall be deemed conclusive evidence against the validity of such claim.' From this you will observe that your client has ample time in which to 'commence this action,' should he desire to test the validity of the various clauses in our policy touching 'proceedings in case of loss' to ascertain, estimate, and appraise the same. In conclusion, for your personal convenience, permit us to inclose you herewith a copy of the Phoenix policy, and remain, with much respect,

"Yours very truly, H. M. Magill, Gen'l Agt."

Kittredge, Wilby & Simmons, for plaintiffs in error.

Stephens, Lincoln & Smith, Thompson, Richards & Park, and Paxton, Warrington & Boutet (Charles H. Stephens, Channing Richards, and T. B. Paxton, of counsel), for defendant in error.

Before TAFT and LURTON, Circuit Judges, and RICKS, District Judge.

TAFT, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

In the case of Insurance Co. v. Hamilton, reported in 8 C. C. A. 114, 59 Fed. 258, it was held by this court, all the judges concurring, that the joint demand for a joint appraisal by the 12 insurance companies contained in the joint correspondence was not within the terms of the policy of the Connecticut Fire Insurance Company providing for an appraisal, for the reason that such a policy stipulated for a separate appraisal. This holding is equally applicable to the case at bar, for the appraisal clauses in the Connecticut and Phoenix policies are substantially similar. In the Connecticut case, Judge Severens, referring to the demand for an appraisal in the joint correspondence, said:

"This was not a demand for an appraisal by the insurance company such as its policy gave it a right to make. It did not acquire its rights in any respect from the policies of other companies, and it had no legal concern with their disputes or the mode to be adopted for their settlement, and had no obligation to champion their cause or mix its controversy with theirs; and the insured was not bound to accept such proposition for determining the value and damage as was demanded by the companies, this among them. If he had done so, it would have been an arbitration aside and independent of the policy, standing on the general ground of common-law arbitration."

Judge Severens was of the opinion, however, that the joint correspondence did contain a notice that the loss fixed in the proofs was not satisfactory to the insurer, and that, therefore, an appraisal became a condition precedent to the payment of any money under the policy, and that, by the sale of the property before the expiration of the 60 days, Hamilton had rendered such an appraisal impossible, had prevented the performance of the condition precedent, and had therefore deprived himself of any right of recovery under the policy.

Judge Swan was of the opinion that the appraisal was not a condition precedent, and that the failure to make a demand for such appraisement within the terms of the policy was a waiver of it, and that the proof of loss having been filed, and not objected to otherwise than in the joint demand for an appraisement, the insurance company was estopped to deny that the proofs of loss were sufficient under the policy. I was of the opinion that, while the joint demand for the joint appraisal was not within the terms of the policy, that there was enough in the correspondence to notify Hamilton that the Connecticut Insurance Company did not agree with his valuation of the loss, and that this notice made proofs of loss with an appraisal a condition precedent to recovery of the loss under the policy. But it seemed to me that by the last letter from all the companies under date of May 7, 1886, each company assumed an obligation to take the initiative in the matter of appraisal, and submit a form of appraisal to Hamilton, failing which the Connecticut company waived the defect in the proofs of loss made by the absence of the appraisal. If an appraisal was waived, the right to take the goods at an appraised value went with it, and it was therefore immaterial what had been done with the stock by the insured. To quote the language used in the opinion:

"By this letter the defendant company assumed an obligation to submit a form of appraisal to Hamilton. Whatever duty under the policy there might have been upon Hamilton to take the initial step towards an appraisement after receiving notice of a disagreement as to valuation so as to fulfill the condition precedent to his recovery, this communication was a clear waiver of that duty by the defendant company. It was a clear invitation to Hamilton to do nothing until the company had acted. The company never did act. It cannot now be heard to say that Hamilton lost all his rights under the policy by delay which the company itself occasioned. The appraisement was, under this policy, a part of the proof of loss. The conduct of the company was as much as to say: 'We have your proof of loss; we object to it; and we will hereafter point out to you the method by which it can be remedied.' Subsequent failure to point out the method of remedying it estops the company from asserting that the proof of loss does not comply with the requirements of the policy."

I am authorized to say that the court, as at present constituted, concurs in the view just stated of the effect of the letter of May 7th upon the mutual relations and obligations of the parties to the policy involved in the Connecticut Fire Insurance Company Case; and, as that policy is in all substantial respects the same as the one in suit at bar, we are of the opinion that if the Phoenix Insurance Company had failed, as the Connecticut Insurance Company did fail, to take any action after the letter of May 7th, it could not now be heard to claim that the proofs of loss already filed were not a sufficient compliance with every condition precedent to a recovery of the actual loss. In this case, however, the Phoenix Insurance Company did, on May 24th, make a demand for arbitration in accordance with the provisions of their policy, and protested against the proposed sale of the property insured, as in direct conflict with the right of the insurer. We are of the opinion that if this letter was written within a reasonable time after the letter of May 7, 1886, closing the joint correspondence, it did properly and unquestionably demand an appraisement, and that a failure to comply therewith was a failure of

the condition precedent to the recovery under this policy, which must defeat the plaintiff's right of action. In other words, we think the sole question in the case, as now presented, is whether the demand for a separate appraisal, in accordance with the terms of the policy of the Phoenix Insurance Company, was made within a reasonable time after the close of the joint correspondence.

The court below treated the question of reasonable time as one of law, and told the jury that a sufficient demand for a separate appraisal within due time had been made, and thereupon directed a verdict for defendant. It is contended on behalf of plaintiff in error that, under the circumstances of this case, the question of what was reasonable time was a mixed question of law and fact, to be left with the jury with proper instructions. The delay between the close of the joint correspondence and the letter demanding a separate appraisement from the Phoenix Insurance Company was 17 days. The provision of the policy was that the loss was to be paid 60 days after due notice and satisfactory proof of the same had been received at the office in accordance with the terms of the policy. The learned trial judge seems to have thought the effect of this clause to be that the company had 60 days within which to object to the proofs of loss. Was this a proper inference? Could the company wait until the fifty-ninth day after receiving proof, and then object to it, and postpone the time of payment for 60 days more? It seems to us clear that the company would have no right to do so. The 60 days is the period between the reception of the satisfactory proof and the time of payment, and not the period between the tendering of any proof and the acceptance of it as satisfactory. It is true that a delay of 60 days before rejecting a proof of loss would certainly be unreasonable, but it by no means follows that any time short of 60 days would be reasonable. The reasonableness of time depends on all the surrounding circumstances. In the opening of the negotiations, Hamilton had informed all the companies, including the defendant, that delay in the settlement so much interfered with his business as to cost him $500 a day. The negotiations for a joint appraisal occupied from April 26th until May 7th, during which Hamilton was constantly pressing for an early settlement. When, then, on the 7th of May, the Phoenix Insurance Company assumed to submit a form of appraisal, it was certainly under an obligation to act with greater celerity than at the beginning of the negotiation in April. If the company had the right to delay submission of an appraisal for 17 days from May 7th, then it had the right to delay for a longer time the sale of the stock of goods, because appraisal and notice of sale must take place thereafter. These and many other circumstances might be relevant in considering the question of reasonable time. A case just like this has probably never occurred before. It is not quite clear what the delay was for. It might have been to investigate further the amount of the loss, or to secure the services of a proper appraiser. At all events, the circumstances are numerous enough to render the inference as to reasonable time from them not so certain as to make it a question of law.

We are met in this view, however, by the vigorous contention on the part of counsel for the company that the question of reasonable time is always a question of law to be decided by the court. If it were so, we then should feel compelled to go on and consider the question whether, as a matter of law, 17 days was not an unreasonable time for the company to delay its demand for an appraisement; but, as we view the authorities, the contention by counsel for the company cannot be sustained. In Tindal v. Brown, 1 Term R. 168, Lord Mansfield said:

"What is reasonable notice is partly a question of fact and partly a question of law, and, wherever a rule can be laid down with respect to this reasonableness, that should be decided by the court and adhered to by every one, for the sake of certainty."

In Insurance Co. v. Stark, 6 Cranch, 268, the suit was on a policy of marine insurance, and one question was whether the assured had made an abandonment of the captured vessel within a reasonable time. Chief Justice Marshall said:

"The law is settled that an abandonment, to be effectual, must be made in reasonable time; but what time is reasonable is a question, compounded of fact and law, which has not yet been reduced to such certainty as to enable the court to pronounce upon it without the aid of a jury. Certainly the delay may be so great as to enable every man to declare, without hesitation, that all will admit it to have been made in reasonable time; but there may be such a medium between these extremes as to render it doubtful whether the delay has been reasonable or otherwise. If it was a mere question of law, which the court might decide, then the law would determine, to a day and an hour, on the time left for deliberation, after receiving notice of the loss. But the law has not so determined, and it therefore remains a question, compounded of fact and law, which must be found by a jury, under the direction of the court."

In Cocker v. Manufacturing Co., 3 Sumn. 530, Fed. Cas. No. 2,932, the question whether goods that had been ordered from England had been delivered within a reasonable time was submitted to the jury. Mr. Justice Story said to the jury:

"The whole question now before the jury is, whether these articles were manufactured and offered to be delivered within a reasonable time. That reasonable time must be judged of by all the circumstances, and, of course, with all the natural calculations, which might fairly arise from the distance of the countries, the season of the year, the state of the markets, and orders, the pressure of business, and the common disappointments and retardations incident to the manufacture of any new article."

In Facey v. Hurdom, 3 Barn. & C. 213, the question was whether the crop out of which the tithe was to be collected had been left on the ground a reasonable time for the tithe owner to compare the tenth set out for him with the residue. The court said:

"There are certainly cases where it is for the judge to say what is a reasonable time, but in this instance the question depended on a variety of circumstances, such as the residence of the respective parties, the time when notice was given that the corn would be tithed, the state of the weather, and other things most proper for the consideration of the jury; and I think the question was properly left to them."

In Donahue v. Insurance Co., 56 Vt. 374, the suit was upon an insurance policy, which required that the person claiming remuneration for loss should forthwith give notice thereof to the office of the

company. This was held by the court to mean that he should give notice with due diligence, and within a reasonable time, without unnecessary delay, under all the circumstances of the case; and so it was further held that where the facts and circumstances were many, and the question of reasonableness depended on the general inference from those facts, the inference became a question of fact to be submitted to the jury. To sustain this, the language of the supreme court of Connecticut in Lockwood v. Assurance Co., 47 Conn. 553, is quoted, as follows:

"Extreme cases offered here may be easily determined. Between them there is a wide belt of debatable ground, and cases falling within it are governed so much by the peculiar circumstances of each case that it is much better to determine the matter as a question of fact."

In Haskins v. Insurance Co., 5 Gray, 432, the question was whether repairs made by insurers under the right reserved in the policy were made within a reasonable time. This depended on the dates of various notices given by the parties, the delay occasioned by the sickness and death of workmen employed, and the peculiar nature of the property. It was held that, although the particular circumstances were not disputed, the question was one of fact to be submitted to the jury.

The case of Davis v. Insurance Co., 8 R. I. 277, was quite like the present case in its facts. There the suit was upon a policy of fire insurance on the plaintiffs' stock of dry goods in their store in Providence. The goods were burned on the 22d of April, 1862. Preliminary proofs of loss were filed on the 31st day of May, 1862. The defendants made no reply to the claim of proofs until the 19th of June following. The court left it to the jury to say whether the written objection of the defendants to the preliminary proofs of loss of plaintiffs was furnished within a reasonable time. And the supreme court of Rhode Island held this course proper. The court said:

"The question of reasonable time is, in many and perhaps most cases a question for the court. It was said by Lord Mansfield, in Tindal v. Brown, 1 Term R. 167: 'Whenever a rule can be laid down with respect to reasonableness, it should be decided by the court, and adhered to by every one for the sake of certainty.' The courts have accordingly in many cases, as in the case of notice of dishonor of a promissory note or bill of exchange, or of notice to quit between landlord and tenant, adopted fixed rules; and there are numerous cases depending on particular facts and circumstances in which a court cannot dispense with the aid of a jury. 1 Starkie, Ev. 455; Howe v. Huntington, 15 Me. 350. The case before us was not a case where, in the language of Lord Mansfield, a rule could be laid down in respect to reasonableness. It belongs to a class of cases in which the circumstances affecting the reasonableness of notice would seldom be the same, and therefore we think the court did not err in leaving the question of reasonableness to the jury."

See, also, Cochran v. Toher, 14 Minn. 385 (Gil. 293); Luckhart v. Ogden, 30 Cal. 548; Magee v. Carmack, 13 Ill. 289; 1 Starkie, Ev. 514, 516, and note 1 on 517.

The rule is sometimes stated to be that, where the facts are not in dispute, the question of reasonable time is always for the court; but in the foregoing cases the facts were not in dispute. The facts, though undisputed, were so numerous that the inferences from them

as to reasonableness of the time taken were disputable as inferences of fact.

The number of authorities on this subject is myriad; and there are many in which the rule is stated without qualification that the question of reasonable time is a question of law for the court, but we think it will be found that such cases may be divided into two classes. The first class embraces commercial transactions which happen in the same way, day after day, and present the question of reasonable time on the same data in continually recurring instances, so that, by a series of decisions of the courts, the reasonable time has been rendered certain. The second class of cases is where the time taken is so clearly reasonable or unreasonable that there can be no room for doubt as to the proper answer to the question. Where, however, the answer to the question is one dependent on many different circumstances which do not constantly recur in other cases of like character, and with respect to which no certain rule of law has heretofore been laid down, or could be laid down, the question is one of fact for the jury.

In Wiggins v. Burkham, 10 Wall. 129, the question was whether an account rendered had been objected to within a reasonable time, so that it could not be introduced as prima facie evidence of its correctness. It was held that the question of reasonable time, in such a case, was a question of law; that between merchants at home an account which has been presented, and no objection made thereto after the lapse of several posts, must be treated, under ordinary circumstances, as being, by acquiescence, a stated account. Now, it is obvious that in such a case the data upon which a reasonable time can be fixed are few and simple. It is also obvious that it is of the class of cases constantly recurring with similar circumstances in dealings between merchants, so that for years it has been settled law that, if a merchant allows several posts to go by without objecting to an account sent to him, it is to be regarded as stated. Mr. Justice Swayne used this language in delivering the opinion of the court:

"The proposition that what is reasonable time in such cases is a question for the jury, as laid down by the court below, cannot be sustained. Where the facts are clear, it is always a question exclusively for the court. The point was so ruled by this court in Toland v. Sprague, 12 Pet. 336. Where the proofs are conflicting, the question is a mixed one of law and of fact. In such cases the court should instruct the jury as to the law upon the several hypotheses of fact insisted upon by the parties."

He was dealing with accounts, and it was to "such cases" that the rule, as he states it, applies. Toland v. Sprague, referred to, was also a case of a stated account.

In Nunez v. Dautel, 19 Wall. 560, the question was when money under the following contract became due:

"Columbus, Ga., September 1st, 1865.

"Due Joseph Dautel, or order, $1,619.66, being balance of principal and interest for four years and six months' services. This we will pay as soon as the crop can be sold, or the money raised from any other source, payable with interest.

"I. M. Nunez & Co."

Suit was brought more than five years after the date of the instrument. The court held that the stipulation secured to the defendants a reasonable amount of time within which to procure, in one mode or other, the amounts necessary to meet the liability, and that five years was more than a reasonable time, so that the obligation was due at the time suit was brought. In this case there could be no doubt that five years was ample time within which payment should have been made. The case comes under the head of the second class of cases mentioned above, because, in the absence of all circumstances, except the instrument itself, every one would say that five years was an unreasonable delay in paying the debt. In neither of these decisions by the supreme court of the United States is the rule as laid down by Chief Justice Marshall in the case in 6 Cranch, already quoted, criticised or overruled. Indeed, in the very volume (10 Wall.) which contains the case of Wiggins v. Burkham, is the case of Feild v. Farrington, at page 141, in which the question was whether factors had held cotton too long in view of a falling market. They held it 10 months, during which time cotton fell from 43 cents to 20 cents. Said Justice Strong, delivering the opinion of the supreme court:

"Whether this long delay, in view of a falling market, was in the exercise of a sound discretion, good faith, and reasonable diligence, was a question that should have been submitted to the jury. If the delay was unreasonable, if it was in violation of the plaintiffs' duty as factors, they, rather than the defendant, should bear the loss that resulted from it."

In the case of Brewing Co. v. Bullock, 8 C. C. A. 14, 59 Fed. 83, we held that a question of reasonable time was a question of law, citing as authority Wiggins v. Burkham, 10 Wall. 129; but that was a case where the time was so long that no fair-minded man could have any doubt that the delay was unreasonable. There a dealer in rice at New York shipped to a brewing company in Cincinnati two car loads of rice, without any order for the same. The brewing company, by mistake, paid the freight, and took the rice into its warehouse. Its officers discovered the mistake within a week after the receipt of the rice, and for more than 30 days, when rice was a commodity of fluctuating market value, with no excuse of any kind for the delay, they failed to notify the shippers that the company would refuse to take the rice. It was held that, from such delay in rejection, acceptance must be conclusively presumed, and that the trial court had the right to treat the matter as one of law. We think that because the case at bar presents so many facts which may more or less affect the question of reasonable time, and because it is not a case, parallels to which, by constantly recurring in courts of justice, have led to the establishment of any certain rule, the question of reasonable time was for the jury. The court erred, therefore, is not submitting it to that tribunal.

For this reason, the judgment of the court below is reversed, and a new trial ordered.