# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 28, 2020        Decided February 16, 2021

No. 19-5070

UNITED STATES OF AMERICA,
APPELLEE

v.

DOUGLAS F. GREER, M.D. AND DOUGLAS F. GREER, M.D.,
P.C., DOING BUSINESS AS DOWNTOWN OPHTHALMOLOGY
CENTER,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-00789)

*Suraj Kumar* argued the cause for appellants. With him
on the briefs was *Steven M. Cady*.

*Oliver W. McDaniel*, Assistant U.S. Attorney, argued the
cause for appellee. With him on the brief was *R. Craig
Lawrence*, Assistant U.S. Attorney.

Before: WILKINS, KATSAS and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*:   In 2007, Dr. Douglas Greer agreed to pay the government a settlement of up to $1 million. In 2016, the government sued to collect.

Pointing to a six-year statute of limitations, Greer argued that his breach of the settlement occurred more than six years before the government sued to collect.   The government pointed to facts suggesting Greer's breach was later, and thus within six years of its 2016 suit.   The result was a material and disputed question of fact.

The district court granted summary judgment for the government.   But we conclude the parties' material and disputed fact question should have been answered later, only after a bench trial.   We therefore reverse and remand for that trial.

I

Dr. Douglas Greer defrauded the government out of more than $1 million.   As early as 1999, Greer, an ophthalmologist, performed needless medical procedures on his patients and asked Medicare to foot the bill.[1]   The government finally grew wise to Greer's schemes and indicted him for health care fraud. In 2007 he pled guilty and was sentenced to 18 months' imprisonment, followed by 24 months of supervised release. Moreover, Greer had to pay back taxes, $50,000 in fines, and $1.2 million in restitution.

That same year, the government claimed Greer had committed civil violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.*   Two days before his criminal sentence was handed down, Greer settled his potential civil liability under

---

[1] He also billed for procedures that he never performed.

the Act. In exchange for the government not pursuing a civil suit, Greer agreed to liquidate his retirement accounts and other assets, sell a rental home that he owned in Washington, D.C., and pay the government up to $1 million (depending on how much he had left after first satisfying the financial obligations of his guilty plea).

In September 2007, Greer liquidated an insurance policy and paid the resulting $189,000 to the government toward the civil settlement.[2] Two months later, he started serving his prison sentence. He was released in March 2009 and completed his supervised release program in March 2011.

Greer's case sat dormant until December 2015, when the government sent him a letter demanding that he make payments on his settlement balance. After Greer refused, the government brought a breach-of-contract suit against him in April 2016, seeking specific performance — i.e., the sale of Greer's rental house.

The parties cross-moved for summary judgment. Greer argued (among other things) that the government brought its April 2016 suit after the six-year statute of limitations had elapsed. The question was thus whether Greer breached his obligations under the contract before or after April 2010.

Greer puts the breach before April 2010. Under his theory, he breached as early as January 2008 (when he did not sell his rental house within six months of the settlement) but no later than 2009 (when he was released from prison).

---

[2] By that point, Greer had presumably liquidated his retirement accounts and used those funds to pay off his criminal penalties.

4

The government puts Greer's breach after April 2010. Under its theory, the contract did not anticipate that Greer would sell his house before 2012. Thus, Greer's failure to sell it before 2012 was not a breach.

The district court granted summary judgment to the government on this question.

Greer appealed.

II

We review the district court's grant of summary judgment de novo. *Katopothis v. Windsor-Mount Joy Mutual Insurance Co.*, 905 F.3d 661, 667 (D.C. Cir. 2018). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). It is not appropriate when "a reasonable jury could return a verdict for the nonmoving party." *See Thompson v. District of Columbia*, 967 F.3d 804, 813 (D.C. Cir. 2020).

A

Greer argues that the settlement contract is unenforceable because the parties omitted essential terms. "Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract." 1 A. Corbin, CORBIN ON CONTRACTS § 95, at 394 (1963); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 33(a) (1981).

No doubt the contract here leaves much to be desired when it comes to details. As Greer rightly points out, the settlement agreement does not say for how much Greer must sell his rental

house. Nor does it say when he must do so (more on that to come).

But notwithstanding its shortcomings, the contract imposes clear obligations on Greer. It says, in no uncertain terms, that Greer must sell the house. The contract states that Greer "shall liquidate" certain specified assets, including his rental house. He had to use the proceeds first to settle his criminal liabilities, then to pay the government up to $1 million as part of his civil settlement.

Moreover, Greer clearly understood those obligations. He partially fulfilled them, liquidating an insurance policy and paying the government $189,000. And he acknowledged the other obligations at his criminal sentencing hearing. There, he conceded he had "agreed to give up . . . his one rental property" and argued that he should receive a lighter sentence in light of the "draconian" settlement contract. He cannot now reverse course and claim the settlement contract is so vague that he did not understand his obligations. His argument thus fails.

B

Greer also argues that the district court should have granted him summary judgment because the government brought its suit too late. The government had six years to sue for a breach of contract. 28 U.S.C. § 2415(a). It filed suit in April 2016. If Greer breached the contract before April 2010, then Greer is correct and the government's suit was untimely.

To determine when Greer breached the contract, we start with the contract's text. *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 862 (D.C. Cir. 2015). Unfortunately, the contract here says nothing about when Greer needed to sell his home. When a contract does not specify when parties must perform,

courts assume parties must act "within a reasonable time." *Clayman v. Goodman Properties, Inc.*, 518 F.2d 1026, 1033 n.44 (D.C. Cir. 1973).

In some situations, the question of how much time was "reasonable" is a question of law. That's the case for "commercial transactions which happen in the same way, day after day, and present the question of reasonable time on the same date in continually recurring instances." *Hamilton v. Phoenix Insurance Co. of Hartford*, 61 F. 379, 390 (6th Cir. 1894) (Taft, J.).

At other times, however, a court cannot define a "reasonable" period of time for contract compliance without a jury trial or a bench trial. There, "the answer to the question is one dependent on many different circumstances which do not constantly recur in other cases of like character." *Id.* It thus "is one of fact for the jury." *Id.*; *accord Cocker v. Franklin Hemp & Flax Manufacturing Co.*, 5 F. Cas. 1152, 1153 (C.C.D. Mass. 1839) (Story, J.).

Greer's case fits within the second category. As any homeowner knows, the purchase and sale of property does not "happen in the same way, day after day." A lot of "different circumstances" determine how fast a real estate transaction can close.

On the one hand, Greer says he could have sold his rental house within six months, and he pointed to some evidence supporting that contention.

On the other hand, the government says it's entirely unreasonable to expect that a 67-year-old could have sold a home in Washington, D.C., mere months before an impending prison sentence. Instead, the government points to text in the

contract that arguably suggests a longer timeframe for performance. Specifically, the contract obligated Greer to "provide to the United States specific documentation exactly detailing the monies obtained from the liquidation of" Greer's assets, and failure to do so would "be grounds for the United States to file a false claims act lawsuit regarding the allegations settled herein," with the "statute of limitations for those claims . . . waived." The statute of limitations for some of the "allegations settled herein" would not have run until 2012 — indicating, the government contends, that performance could have lasted at least that long. And if Greer had at least until 2012 to perform, he could not have breached the contract until then, making the government's 2016 suit timely.

At the end of the day, we're left with a material and disputed fact question — one that for two centuries jurists have said a jury should decide, and one that requires someone to "weigh the evidence and determine the truth [i.e., the reasonableness] of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). It thus would have been best for the district court to resolve that issue after a bench trial as a question of fact.

\* \* \*

We reverse the district court's grant of summary judgment and remand for a bench trial.