# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 13, 2022          Decided April 8, 2022

No. 20-5264

KARIN WENG,
APPELLANT

v.

MARTIN J. WALSH, SECRETARY OF LABOR,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00504)

*Karin Weng*, pro se, argued the cause and filed the briefs for appellant.

*Stephen M. DeGenaro*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *R. Craig Lawrence* and *Jane M. Lyons*, Assistant U.S. Attorneys.

Before: SRINIVASAN, *Chief Judge*, TATEL, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: From 1995 until 2012, Karin Weng ("Weng" or "Plaintiff") was employed as an Employee Benefits Law Specialist at the U.S. Department of Labor ("Department" or "Defendant"). In December 2010, after filing a number of complaints against Department officials, Weng filed a lawsuit against the Department in the District Court. *See Weng v. Solis*, No. 1:10-cv-02051 (D.D.C.) ("*Weng I*"). Her complaint alleged race, national origin, and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as well as retaliation in violation of Title VII and the Rehabilitation Act. The parties settled their dispute in *Weng I*, and the District Court dismissed the action in December 2013. The settlement agreement "provides for the full and complete satisfaction" of "all claims relating to [Weng's] employment with the Department," "*[e]xcept as specifically provided*" elsewhere in the release. Joint Appendix ("J.A.") 126 (emphasis added).

While *Weng I* was still pending, Weng was informed she would be terminated. Weng then sent an email to her superiors purporting to resign in lieu of removal; and in March 2012, she filed a Grievance through her union representative contesting her removal. In April 2015, Weng filed the present lawsuit claiming that her removal was motivated by retaliation, in violation of Title VII and the Rehabilitation Act, and race, national origin, and sex discrimination, in violation of Title VII. *See Weng v. Perez*, No. 1:15-cv-00504 (D.D.C.) ("*Weng II*"). After protracted litigation on ancillary matters, the District Court granted the Department's motion for summary judgment, reasoning that Weng had released her removal-related claims in the settlement agreement that concluded *Weng I*. *Weng v. Scalia*, No. 1:15-cv-00504, 2020 WL 3832950, at *5-7 (D.D.C. July 8, 2020). Weng now appeals.

We reverse the District Court's judgment. We hold that the disputed settlement agreement did not release the Department from all Title VII claims. To the contrary, the settlement agreement contains an express carveout allowing Weng to pursue any claims included in the separate Grievance that she had filed against the Department complaining about the Department's failure "to conform to laws and regulations governing its treatment of Ms. Weng, including, but not limited to, . . . the Civil Rights Act of 1964." J.A. 115. We remand for the District Court to consider in the first instance whether that Grievance preserved the claims Weng advances in this litigation.

## I. BACKGROUND

Weng is an Asian woman of Taiwanese national origin. From 1995 until March 2012, she worked as an Employee Benefits Law Specialist in the Department's Employee Benefits Security Administration Office of Exemption Determinations ("Office"). According to Weng, she "never received a negative performance evaluation, nor any formal counseling or discipline, from 1995 to 2005." Second Am. Compl. ¶ 38, J.A. 169. During the timeframe at issue, Weng's union representative – the American Federation of Government Employees, Local No. 12, AFL-CIO ("Local 12") – had a collective-bargaining agreement with the Department.

Weng alleges that, from the time she joined the Office, "she, along with other minority employees, was subjected to offensive racial, ethnic, and/or sexually charged slurs, comments, and jokes by [Office] management officials." *Id.* ¶ 34, J.A. 168. Beginning in 2004, two of Weng's coworkers filed Equal Employment Opportunity ("EEO") complaints against Office management. Weng appeared as a witness in her coworkers' cases, and she alleges that the harassment against

her escalated after she testified in support of a colleague. Starting in 2006, Weng also filed multiple EEO complaints and union grievances about her working conditions.

In December 2010, Weng, represented by counsel, filed a lawsuit against the Department in the District Court. *See Weng I*. Her complaint alleged race, national origin, and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as well as retaliation in violation of Title VII and the Rehabilitation Act. The District Court dismissed the action in December 2013 after the parties reached a settlement. The settlement agreement "provides for the full and complete satisfaction" of "all claims relating to [Weng's] employment with the Department," *"[e]xcept as specifically provided" elsewhere in the release*. J.A. 126 (emphasis added). The scope of Weng's release of claims against the Department is the central issue before the court in this appeal. *See* Section II.B, *infra*.

In April 2011, a few months after Weng filed *Weng I*, she was told during a mid-year review that her performance was unacceptable. The Department placed her on a performance improvement plan in the summer of 2011. In early 2012, Weng received a notice of proposed removal, which stated that she had failed to improve her performance to an acceptable level. On March 7, 2012, Weng received a decision from the Office's Acting Director sustaining the proposed removal and informing Weng that she would be terminated on March 9, 2012. On March 9, Weng sent an email to her supervisors stating that she resigned her position "in lieu of removal." *Weng v. Perez*, Civ. Action No. 15-504, at 4 (D.D.C. Oct. 15, 2015), *reprinted in* J.A. 150.

Weng challenged the removal decision pursuant to the negotiated grievance procedure prescribed in the collective-

bargaining agreement between Local 12 and the Department. The Grievance alleged that the Department "failed to conform to laws and regulations governing its treatment of Ms. Weng, including . . . the Civil Rights Act of 1964," *inter alia*. J.A. 115. The dispute proceeded to arbitration, where the arbitrator determined that he lacked jurisdiction over the Grievance because Weng failed to establish that her resignation was involuntary.

Weng appealed the arbitrator's decision to the Merit Systems Protection Board ("MSPB"), an independent adjudicator established pursuant to the Civil Service Reform Act ("Act"), 5 U.S.C. § 1101 *et seq*. *See Kloeckner v. Solis*, 568 U.S. 41, 44 (2012) (citing 5 U.S.C. §§ 1204, 7512, 7701). The Act provides "a framework for evaluating personnel actions taken against federal employees." *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1980 (2017) (citation omitted). For certain serious personnel actions – including removal – "the affected employee has a right to appeal the agency's decision to the MSPB." *Id.* (citation omitted). The MSPB also has jurisdiction to hear "mixed" cases, which are those "in which the asserted claim (or claims) both arises under a federal employment discrimination law (such as Title VII) and also relates to or stems from an action [such as removal] that is within the [MSPB's] jurisdiction." *Niskey v. Kelly*, 859 F.3d 1, 6 (D.C. Cir. 2017) (citations omitted). However, "[a]n employee who voluntarily resigns . . . has no right to appeal to the MSPB." *Shoaf v. Dep't of Agric.*, 260 F.3d 1336, 1340-11 (Fed. Cir. 2001) (citation omitted).

In Weng's case, the MSPB adopted an administrative judge's recommendation that the appeal be dismissed for lack of jurisdiction based on Weng's supposed failure to establish that her termination was involuntary. The MSPB's order

informed Weng that she had the right to request review from the Federal Circuit.

Proceeding pro se, Weng then filed the instant action, *Weng II*, in the District Court. This lawsuit is based solely on claims arising from her removal. Weng's complaint alleges retaliation, in violation of Title VII and the Rehabilitation Act, and race, national origin, and sex discrimination, in violation of Title VII. In 2015, the Department moved to dismiss for lack of jurisdiction. The District Court granted the motion, reasoning that petitions for review of the MSPB's jurisdictional dismissals must be filed in the Federal Circuit, rather than in the district courts. *Weng v. Perez*, Civ. Action No. 15-504 (D.D.C. Oct. 15, 2015), *reprinted in* J.A. 147-56. Weng appealed to this court, which summarily affirmed the District Court's judgment. *See* Order, *Weng v. Perez*, No. 15-5299 (D.C. Cir. Nov. 8, 2016). The District Court then transferred the case to the Federal Circuit. However, an intervening Supreme Court decision clarified that the district courts, not the Federal Circuit, are the proper fora to hear "mixed" cases dismissed by the MSPB on jurisdictional grounds. *Perry*, 137 S. Ct. at 1988. This court then granted Weng's petition for rehearing and vacated its previous order. *See* Order, *Weng v. Acosta*, No. 15-5299 (D.C. Cir. Oct. 3, 2017). We remanded the matter, and the Federal Circuit transferred the case back to the District Court.

Before the District Court in *Weng II*, the Department filed a motion for summary judgment or, alternatively, for judgment on the pleadings. The Department argued, *inter alia*, that Weng's action involved some of the same claims or causes of action resolved in *Weng I*. The Department thus argued that, under the doctrine of *res judicata*, it was entitled to judgment in its favor on any claims for which Weng had already obtained relief.

The District Court granted the Department's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure as to the Rehabilitation Act claims and denied the motion as to the Title VII claims. *Weng v. Pizzella*, No. 1:15-cv-00504, 2019 WL 6109268, at *7-8 (D.D.C. Oct. 31, 2019). The court concluded that Weng's Rehabilitation Act claims were barred because the relevant allegations pertained to claims that had been conclusively decided. *Id.* at *7. As to the Title VII claims, however, the court reasoned that "a dispute of fact between the parties as to which specific conduct [Weng] has recovered on, and which she has not," rendered judgment on the pleadings inappropriate. *Id.* at *8.

Following discovery, the Department moved for summary judgment on the Title VII claims. In its analysis, the District Court stated that it "ha[d] already established that [Weng] was effectively terminated" before she sent the email purporting to resign in lieu of removal. *Weng v. Scalia*, No. 1:15-cv-00504, 2020 WL 3832950, at *2 (D.D.C. July 8, 2020) (citation omitted), *reprinted in* J.A. 356. Nonetheless, the District Court granted summary judgment to the Department, concluding that the *Weng I* settlement agreement "settled any claims within the Grievance related to discrimination and retaliation under Title VII." *Id.* at *7. The trial court also denied Weng's request to amend her complaint. *Id.* at *4-5.

Weng now appeals pro se, renewing only her Title VII claims.

## II. ANALYSIS

### A. Standard of Review

"We review the [D]istrict [C]ourt's grant of summary judgment de novo." *United States v. Greer*, 987 F.3d 1089, 1091 (D.C. Cir. 2021) (citation omitted).

### B. The *Weng I* Settlement Agreement Did Not Release Any Removal-Related Title VII Claims Included in the Grievance

The District Court granted the Department's motion for summary judgment because it concluded that the *Weng I* settlement agreement released the Department from all Title VII claims relating to Weng's removal. As explained below, the unambiguous terms of the settlement agreement foreclose the District Court's reading.

"We interpret a settlement agreement under contract law." *Keepseagle v. Perdue*, 856 F.3d 1039, 1047 (D.C. Cir. 2017) (citation omitted). If a contract's terms "are unambiguous on their face, interpretation is considered a question of law appropriately resolved by this court." *United States ex rel. Dep't of Lab. v. Ins. Co. of N. Am.*, 131 F.3d 1037, 1042 (D.C. Cir. 1997) (citation omitted).

In relevant part, the *Weng I* settlement agreement's release provision states:

8. <u>Release</u>. *Except as specifically provided in this paragraph*, this Stipulation provides for the full and complete satisfaction of all claims which have been or could have been asserted by plaintiff in the above-captioned civil action, and all claims relating to her

employment with the Department of Labor, . . . *unless they are among the subjects specifically described below and made part of the listed matters*. Plaintiff hereby fully and forever releases and discharges the [Department] from any and all rights and claims of every kind, . . . including without limitation any rights or claims under . . . Title VII . . . . [P]laintiff agrees, through this Stipulation, to settle and release all such rights and claims, provided, however, that, except for claims that would cover in whole or part anything within the period of her complaint ending April 24, 2009, *nothing in this Stipulation shall affect Plaintiff's ability to pursue any claims that she has currently pending that are the subject of any of the following*:

. . .

> (iii) [Grievance], on appeal to the Merit Systems Protection Board . . . .

This reservation *i[s] not intended to, and does not, increase or decrease Plaintiff's or Defendant's rights or claims in those matters*, and Defendant reserves all defenses that the Agency may have in defending against those claims.

J.A. 126-28 (emphases added).

In granting the Department's summary judgment motion, the District Court interpreted this release to mean that, "even to the extent the Settlement Agreement carved out the Grievance, its broad terms settled any claims within the Grievance related to discrimination and retaliation under Title VII." *Weng*, 2020 WL 3832950, at *7. It reasoned that the provision stating that "Plaintiff hereby fully and forever releases" the Department "from any and all rights and claims of every kind," "including

without limitation any rights or claims under . . . Title VII," indicated that the removal-related Title VII claims raised in the instant action were among those claims settled in *Weng I. See id.* (citation omitted).

We disagree. The contract's express terms make clear that Weng did not release any Title VII claims raised in her Grievance. The release's terms are subject to the proviso "[e]xcept as specifically provided in this paragraph," and the paragraph specifically provides that "nothing" in the release "shall affect Plaintiff's ability to pursue *any* claims that she has currently pending that are the subject of" the MSPB appeal involving the Grievance. J.A. 126-28 (emphasis added). Similarly, the provision carves out from the release any claims that "are among the subjects specifically described below and made part of the listed matters," and the listed matters include Weng's MSPB appeal of the Grievance. *Id.* at 126, 128. The paragraph also states that the reservation "i[s] not intended to, and does not, increase or decrease Plaintiff's or Defendant's rights or claims in those matters." *Id.* at 128. Given these plain terms, *any* claims – including Title VII claims – that "[we]re the subject of" the Grievance on appeal to the MSPB are carved out from the release. *See id.* at 127-28.

Indeed, counsel for the Department conceded at oral argument that the Department does not believe the *Weng I* settlement agreement resolved any removal-related Title VII claims included in Weng's Grievance. Nor did the Department advance this argument in its summary judgment briefing before the District Court. *See generally* Def.'s Mot. Summ. J., *reprinted in* J.A. 277-306; Def's Reply Supp. Mot. Summ. J., *reprinted in* J.A. 336-51. To the contrary, the Department acknowledged that "Plaintiff's Grievance is identified as one of several matters carved out of the parties' settlement agreement," and that "Plaintiff's settlement agreement does not

preclude her from litigating claims she raised in her Grievance." Def.'s Mot. Summ. J. 22, J.A. 296 (citations omitted).

Before this court, the Department instead advances a distinct argument: that "Weng failed to administratively exhaust any Title VII claims" related to her removal because she did not "include those claims in the [G]rievance." Final Br. of Appellee 20. According to the Department, the Grievance "does not include any allegations that the Department terminated Weng because of her race, national origin, or sex, or for prior EEO conduct." *Id.* Therefore, the Department contends that Weng failed to exhaust the removal-related Title VII claims she now advances.

Weng disputes this assertion, stressing that the Grievance "invok[ed] both 5 U.S.C. § 2302" – which "references Title VII" – "and the Civil Rights Act of 1964." Appellant's Reply Br. 10. She also argues that the MSPB "acknowledged Weng's Title VII claims, despite not reaching the merits thereof." *Id.* at 11.

In its summary judgment ruling, the District Court did not address the Department's argument that the Grievance failed to identify Weng's Title VII claims. We decline to reach the issue in the first instance and instead remand for the District Court to do so, assuming the court determines that the Department raised the argument.

For the reasons set forth above, we hold that the *Weng I* settlement agreement does not release any removal-related Title VII claims included in Weng's Grievance. We therefore reverse the District Court's ruling to the contrary.

**III. Conclusion**

For the foregoing reasons, we reverse the District Court's judgment and remand the case for further proceedings consistent with this opinion.